RANDOLPH, Justice,
for the Court:
¶ 1. In 1993, AT & T Corporation[1] and affiliate corporations (collectively, “AT & T”) filed an affiliated group, Mississippi income tax return with the Mississippi Department of Revenue fik/a Mississippi State Tax Commission (“Commission”), using the statutorily-permissible “combined method” of reporting. See Miss.Code Ann. § 27-7-37(2)(a)(ii) (amended by Laws of 2004, eh. 371, § 1, effective January 1, 2004). But from 1994 to 1996, AT & T filed its returns under the “consolidated method” of reporting, which was then statutorily available only to affiliated groups with members doing business and taxable solely in Mississippi, ostensibly to challenge the constitutionality of this distinction. See Miss.Code Ann. § 27-7-37(2)(a)(i). Following an audit in 1997, the Commission issued an “Assessment of Income Taxes” (“Assessment”) of more than $5 million against AT & T.
¶ 2. After unsuccessful administrative appeals before the Commission, AT & T filed a “Petition for Appeal of Additional Income Tax Assessment Ordered by State Tax Commission, For Declaratory and In-junctive Relief, and For Refund of Overpayment of Tax” (“Petition”) in the Chancery Court of Hinds County, Mississippi. The Petition challenged the constitutionality of several tax statutes under the Commerce Clause of the United States Constitution and sought associated relief. See U.S. Const, art. I, § 8, cl. 3. But AT & T’s Petition was not “accompanied with a bond, to be approved by the clerk ..., in a sum double the amount in controversy^]” as then required by Mississippi Code Section 27-7-73. See Miss.Code Ann. § 27-7-73 (repealed by Laws of 2005, ch. 499, § 36, effective July 1, 2005). Rather, AT & T paid the Assessment,[2] then filed the Petition.
¶ 3. Preliminarily, the chancery court found that AT & T had “properly appealed” the full Commission’s “Order.” The chancery court then held that the subject tax statutes violated the Commerce Clause; that the “offensive limitations” were to be struck so that AT & T was granted the “tax benefits” enjoyed by other taxpayers; and, based thereon, that AT & T was entitled to an award of $12,727,174. Thereafter, the Commission appealed those rulings, while AT & T appealed only the chancery court’s interest calculations.
FACTS AND PROCEDURAL HISTORY
¶ 4. From 1993 to 1996, AT & T filed affiliated group, Mississippi income tax returns with the Commission. In 1993, AT & T filed its return using the “combined method” of reporting then authorized by Mississippi Code Section 27-7-37(2)(a)(ii).[3] *1141 But from 1994 to 1996, AT & T filed returns it alleges used the “consolidated method” then provided under Section 27-7-37(2)(a)(i),[4] which was statutorily unavailable to affiliated groups with members doing business both within and outside of Mississippi. See Miss.Code Ann. § 27-7-37(2)(a)(i) (1993). According to AT & T, it filed under this alleged “consolidated method” to challenge the constitutionality of the “combined”/“consolidated” distinction, yet no pleading to that effect was filed before either the Commission or the chancery court at the time. For the 1993-1996 tax years, AT & T paid $4,481,835 in Mississippi income taxes.
¶ 5. In 1997, the Commission commenced an audit of AT & T’s Mississippi income tax returns for the 1993-1996 tax years. During the audit, the Commission, inter alia, (1) changed the method used by AT & T from 1994 to 1996 to the “combined method” provided under Section 27-7-37(2)(a)(ii), and (2) included in net Mississippi business income all intercompany dividends received from distributing corporations which were not doing business in Mississippi or were not subject to taxation in Mississippi in the year of distribution, pursuant to the Commission’s interpretation and application of Mississippi Code Section 27 — 7—15(4) (i) .[5] See Miss.Code Ann. §§ 27-7-15(4)® (Rev.2010), 27-7-37(2)(a)(ii). Based thereon, the Commission issued an Assessment of $5,105,038 against AT & T for additional income taxes, penalties, and/or interest.
¶ 6. Following AT & T’s administrative appeals before the Commission’s Board of *1142 Review and the full Commission, a reduced Assessment of $5,088,516 was affirmed. See Miss.Code Ann. § 27-7-71 (repealed by Laws of 2005, ch. 499, § 36, effective July 1, 2005). The full Commission’s “Order” added that AT & T “shall pay to the [Commission] the income tax assessment of $5,088,516.00, plus up to date interest affirmed by this order within thirty (30) days from the receipt of this order or file a petition and bond in the [c]hancery [c]ourt requesting a hearing.” See Miss.Code Ann. § 27-7-73 (repealed eff. July 1, 2005) (emphasis added).
¶ 7. Yet, instead of filing a bond “approved by the clerk” and “in a sum double the amount in controversy[,]” as then required by Section 27-7-73 (and provided in the full Commission’s “Order”), AT & T chose to pay the Assessment “under protest,” and then separately filed its Petition in the chancery court. Id. According to the Petition, the chancery court had jurisdiction, and venue was proper, pursuant to Mississippi Code Sections 11-13-11 and 27-7-73.[6] See Miss.Code Ann. §§ 11-13-11 (Rev.2004), 27-7-73 (repealed eff. July 1, 2005). The Petition challenged the constitutionality of Sections 27 — 7—37(2)(a)(i) and 27-7-15(4)(i) under the Commerce Clause, and sought associated relief. See U.S. Const, art. I, § 8, cl. 3.
¶ 8. The parties and the chancery court subsequently agreed to bifurcate the matter into two stages — the First Stage to address the constitutionality of the subject tax statutes and, if constitutionally deficient, their application to AT & T; the Second Stage (if necessary) to address the resulting Mississippi income tax computations for AT & T. The parties then submitted extensive stipulations of fact and voluminous exhibits admitted by joint stipulation to the chancery court.
¶ 9. Following the First Stage trial, the June 12, 2006, “Opinion and Order” of the chancery court provided that it had “jurisdiction over the review of the findings of [the Commission] in this matter and venue is proper pursuant to” Section 27-7-73. (Emphasis added.) The chancery court then concluded that Sections 27-7-37(2)(a)(i) and 27 — 7—15(4)(i) both violated the Commerce Clause. As such, the chancery court reversed the full Commission’s “Order” as “arbitrary and capricious....” Regarding AT & T’s remedy, the chancery court struck the “offensive limitations” and granted AT & T the “tax benefits” which were “enjoyed” by other taxpayers. The chancery court further instructed the parties that, for the Second Stage, they were to prepare “appropriate filings concerning the appropriate Mississippi tax computations for AT & T for the [subject] tax years utilizing the tax benefits afforded by this [c]ourt’s decision.”
¶ 10. Following the Second Stage trial and post-trial filings, the chancery court entered its November 16, 2010, “Opinion and Order.” Regarding jurisdiction, the chancery court held that:
AT & T properly appealed the Order of [the Commission] and specifically sought the remedy of a refund of all erroneous income tax amounts paid pursuant to the Order entered by [the Commission], plus prejudgment and post-judgment interest as provided by law. After ten (10) years, [the Commission] now seeks to claim that this [c]ourt lacks the jurisdiction to refund the income tax due to AT *1143 & T. To find so, this [c]ourt would effectively be relegated to finding the subject statutes to be unconstitutional, but be unable to effectuate any remedy. This [ejourt found that it had complete jurisdiction over this matter in 2006 and complete jurisdiction continues to the conclusion of this matter, including all necessary remedies.[7]
(Emphasis added.) The chancery court then concluded that AT & T was entitled to an award of $12,727,174, “as of and through November 30, 2010....”[8]
¶ 11. Thereafter, the Commission filed its “Notice of Appeal” regarding the “Opinions and Orders” of June 12, 2006, and November 16, 2010, while AT & T filed its “Notice of Appeal” only as to the interest calculations in the November 16, 2010, “Opinion and Order.”
ISSUE
¶ 12. On appeal, this Court restates the general issues raised by the parties, as follows:
(1) Whether the chancery court erred in concluding that Sections 27 — 7—37(2)(a)(i) and 27-7-15(4)(i) were unconstitutional under the Commerce Clause.
(2) Whether the chancery court erred in the relief granted to AT & T.
However, we find the lack of jurisdiction is case-dispositive. The chancery court lacked appellate jurisdiction over an administrative-agency appeal which is not in full compliance with statutory requirements.
ANALYSIS
¶ 13. This Court has previously stated that:
[o]n every writ of error or appeal, the first and fundamental question is that of jurisdiction, first, of this court, and then of the court from which the record comes. This question the court is bound to ask and answer for itself, even when not otherwise suggested, and without respect to the relations of the parties to it.
Drummond v. State, 184 Miss. 738, 185 So. 207, 209 (1938) (quoting Morris v. Gilmer, 129 U.S. 315, 325, 9 S.Ct. 289, 292, 32 L.Ed. 690, 694 (1889)). See also Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 95, 118 S.Ct. 1003, 1013, 140 L.Ed.2d 210 (1998) (quoting Arizonans for Official English v. Arizona, 520 U.S. 43, 73, 117 S.Ct. 1055, 1071-72, 137 L.Ed.2d 170 (1997)) (“[Ejvery federal appellate court has a special obligation to ‘satisfy itself not only of its own jurisdiction, but also that of the lower courts in a cause under review,’ even though the parties are prepared to concede it.”); Home Ins. Co. v. Watts, 229 Miss. 735, 753, 93 So.2d 848, 850 (1957) (“the question of jurisdiction may be raised at any stage of the proceedings, and even by the Court of its own motion”). Jurisdiction “is a question of law ... subject to de novo review by this Court.” Re/Max Real Estate Partners, Inc. v. Lindsley, 840 So.2d 709, 711 (Miss.2003) (citing Burch v. Land Partners, L.P., 784 So.2d 925, 927 (Miss.2001)).
¶ 14. AT & T elected to proceed in the chancery court under Sections 11-13-11 and 27-7-73. In the First Stage, the chancery court found that it had “jurisdic *1144 tion over the review of the findings of [the Commission] in this matter and venue is proper pursuant to” Section 27-7-73.[9] (Emphasis added.) In the Second Stage, the chancery court determined that finding the subject tax statutes unconstitutional, yet being “unable to effectuate any remedy[,]” would be “inequitable and irresponsible .... ” According to the chancery court, AT & T “properly appealed” the full Commission’s “Order,” and the chancery court’s “complete jurisdiction,” which existed at the time of the June 12, 2006, “Opinion and Order,” would “continu[e] to the conclusion of this matter, including all necessary remedies.” (Emphasis added.)
¶ 15. AT & T contends that Sections 11-13-11 and 27-7-73 provided the chancery court “with clear jurisdiction to declare the [contested [statutes unconstitutional and to fashion the appropriate equitable remedy.” Additionally, AT & T contends that, beyond the “specific grants of jurisdiction” in Sections 11-13-11 and 27-7-73, the chancery court “had the broad general powers vested in a court of equity.” Finally, AT & T maintains that the “constitutional violations could not have been remedied by refund proceedings, because the [Commission] lacks the power to declare statutes unconstitutional and therefore would never have ordered a refund.”[10]
¶ 16. In cases involving the “payment of an unlawful tax[,]” the State “must provide procedural safeguards against unlawful exactions in order to satisfy the commands of the Due Process Clause.” McKesson Corp. v. Div. of Alcoholic Beverages and Tobacco, 496 U.S. 18, 36, 110 S.Ct. 2238, 2250, 110 L.Ed.2d 17 (1990). See also Marx v. Broom, 632 So.2d 1315, 1319-20 (Miss.1994) (quoting Brinkerhoff-Faris Trust & Sav. Co. v. Hill, 281 U.S. 673, 682, 50 S.Ct. 451, 454-55, 74 L.Ed. 1107 (1930)) (“[w]hether acting through its judiciary or its Legislature, a state may not deprive a person of all existing remedies for the enforcement of a right, which the state has not power to destroy, unless there is, or was, afforded to him some real opportunity to protect it.”). One “procedural safeguard” is “to provide a form of ‘predeprivation process, ’ for example, by authorizing taxpayers to bring suit to enjoin imposition of a tax prior to its payment, or by allowing taxpayers to withhold payment and then interpose their objections as defenses in a tax enforcement proceeding initiated by the State.” McKesson Corp., 496 U.S. at 36-37, 110 S.Ct. 2238 (emphasis added). Another “procedural safeguard” is to permit “a postdeprivation refund action.” Id. at 36, 39, 110 S.Ct. 2238. Under any option, “States may avail themselves of a variety of procedural protections against any disruptive effects of a tax scheme’s invalidation, such as providing by statute that refunds will be available only to those taxpayers paying under protest, or enforcing relatively short statutes of limitation applicable to refund actions.” Id. at 50, 110 S.Ct. 2238 (emphasis added).

Mississippi Code Section 11-13-11

¶ 17. Section 11-13-11 states that “[t]he chancery court shall have jurisdiction of suits by one or more taxpayers ... to restrain the collection of any taxes levied or attempted to be collected without *1145 authority of law.”[11] Miss.Code Ann. § 11-13-11 (Rev.2004) (emphasis added). This Court views Section 11-13-11 as a form of “predeprivation process[,]” which provides a “procedural safeguard] against unlawful exactions” that “satisf[ies] the commands of the Due Process Clause.” McKesson Corp., 496 U.S. at 36-37, 110 S.Ct. 2238. But, although AT & T’s Petition asserted jurisdiction under Section 11-13-11, it is undisputed that AT & T did not seek “to restrain the collection of any taxes levied or attempted to be collected without authority of law.” Miss.Code Ann. § 11-13-11 (Rev.2004) (emphasis added). No overpayment was designated on AT <⅛ T’s Mississippi income tax returns for the 1993 to 1996 tax years[12] and those taxes were paid. Following the audit, the Assessment was paid “under protest.” Thereafter, AT & T filed its Petition in the chancery court. But by that time, there were no taxes for the chancery court “to restrain the collection of[,]” because the taxes already had been collected. Id.
¶ 18. This Court concludes that AT & T’s failure to avail itself of the “predepri-vation process” made available in Section 11-13-11 renders that statute inapplicable in the case sub judice. McKesson Corp., 496 U.S. at 36-37, 110 S.Ct. 2238. Under Section 11-13-11, AT & T could have instituted a predeprivation taxpayer suit in the chancery court challenging the lawfulness of tax “collection” via a Commerce Clause challenge to Sections 27-7-37(2)(a)(i) and/or 27-7-15(4)(i). Miss.Code Ann. § 11-13-11 (Rev.2004). But AT & T did not, and instead paid the subject Mississippi income taxes and the Assessment. In McKesson Corp., the United States Supreme Court stated that:
if a State chooses not to secure payments under duress and instead offers a meaningful opportunity for taxpayers to withhold contested tax assessments and to challenge their validity in a predepri-vation hearing, payments tendered may be deemed “voluntary.” The availability of a predeprivation hearing constitutes a procedural safeguard against unlawful deprivations sufficient by itself to satisfy the Due Process Clause, and taxpayers cannot complain if they fail to avail themselves of this procedure. See [United States v. Mississippi Tax Comm’n, 412 U.S. 363, 368 n. 11, 93 S.Ct. 2183, 2187 n. 11, 37 L.Ed.2d 1 (1973) ] (“[Wjhere voluntary payment [of a tax] is knowingly made pursuant to an illegal demand, recovery of that payment may be denied.”).
McKesson Corp., 496 U.S. at 38 n. 21, 110 S.Ct. 2238 (emphasis added). By “failing] to avail” itself of the “adequate remedy at law” provided in the “predeprivation process” of Section 11-13-11, and instead rendering “voluntary” payments of both the subject Mississippi income taxes and the Assessment, this Court concludes that AT & T “cannot [now] complain.... ” Id. at 36-38 n. 21, 110 S.Ct. 2238; Davis v. Barr, 250 Miss. 54, 62, 157 So.2d 505, 507 (1963) (quoting 2 Am.Jur.2d, Administrative Law, § 596, p. 429). Because of AT & T’s failure to timely invoke the statute, Section 11-13-11 is not a proper basis for the chancery court’s jurisdiction in this case. *1146 Mississippi Code Section 27-7-73
¶ 19. During the subject tax years, Section 27-7-73 provided, in pertinent part, that:
[t]he findings of the [Commission] shall be final unless the taxpayer shall, within thirty days from the date of the receipt of notice of such findings, file a petition in the chancery court of the county in which the taxpayer is a resident or in which the taxpayer is domiciled, or in the case of a nonresident or foreign corporation in either the county in which a place of business or property is located or Hinds County as the seat of state government, requesting a hearing of the case on its merits, which petition shall be a concise statement of the facts as contended for by the petitioner. The petition shall be accompanied with a bond, to be approved by the clerk of said court, in a sum double the amount in controversy, conditioned to pay the judgment of the court. The chancery court shall have jurisdiction to hear and determine said cause or issue joined as in other cases.[13]
Miss.Code Ann. § 27-7-73 (1993) (emphasis added). The full Commission’s “Order” was consistent with the above-quoted statute and expressly provided that AT & T “shall” pay the Assessment “within thirty (30) days from the receipt of this order or file a petition and bond in the [cjhancery [cjourt requesting a hearing.” (Emphasis added.)
¶ 20. Preliminarily, although the Commission conceded that the chancery court had jurisdiction under Section 27-7-73 to “review the findings of the [Commission] in this matter[,]” jurisprudential logic dictates that jurisdiction cannot be conferred on the chancery court by agreement, consent, or stipulation. See Steel Co., 523 U.S. at 95, 118 S.Ct. 1003 (quoting Arizonans for Official English, 520 U.S. at 73, 117 S.Ct. 1055) (“[E]very federal appellate court has a special obligation to ‘satisfy itself not only of its own jurisdiction, but also that of the lower courts in a cause under review,’ even though the parties are prepared to concede it.”); Donald v. Reeves Transport Co., 538 So.2d 1191, 1194 (Miss.1989) (jurisdiction cannot “be conferred on this Court by stipulation of the parties.”); Mississippi State Tax Comm’n v. Mississippi-Alabama State Fair, 222 So.2d 664, 666-67 (Miss.1969) (“Can the administrative agency, the Tax Commission, and a taxpayer, in a hearing before the Commission, ... by an agreement confer jurisdiction upon the circuit court to retry, de novo, the issue of the assessment and collection of taxes required to be determined by the Tax Commission? The answer to that query is, of course, in the *1147 negative.”); People’s Bank v. Calhoun, 102 U.S. 256, 260-61, 26 L.Ed. 101 (1880) (“It needs no citation of authorities to show that the mere consent of parties cannot confer upon a court of the United States the jurisdiction to hear and decide a case.”).
¶ 21. As the stipulation regarding Section 27-7-73 was ineffectual, the question becomes whether AT & T’s actions[14] satisfied Section 27-7-73’s requirements for filing a petition. Recently, this Court addressed analogous bond-related issues in Khurana v. Mississippi Department of Revenue, 85 So.3d 851 (Miss.2012), and 5K Farms v. Mississippi Department of Revenue, 94 So.3d 221 (Miss.2012).
¶ 22. In Khurana, the taxpayer “filed his petition appealing the assessments to the ... [c]hancery [cjourt; however, he did not pay the taxes or post a bond at the time he filed the petition, as required by statute.”[15] Khurana, 85 So.3d at 852. Instead, the taxpayer “paid the taxes [one week later], although he was $212 short of the total due.” Id. at 853. On appeal, this Court stated that “[a] basic tenet of statutory construction is that ‘shall’ is mandatory and ‘may’ is discretionary.” Id. at 854 (quoting Franklin v. Franklin ex rel. Phillips, 858 So.2d 110, 115 (Miss.2003)). According to this Court, “[t]he statute is mandatory, and the appealing party is required not only to file a petition in the chancery court, but also to pay the bond or tax within the thirty-day period.” Khurana, 85 So.3d at 854 (emphasis in original). This Court held that, because Khurana “did not fulfill the mandatory requirements necessary to properly perfect his appeal under [Section] 27-77-7[,]” then “the chancery court did not have appellate jurisdiction over Khurana’s appeal.” Id. at 855. We explained that:
failure to perfect an appeal under [Section] 27-77-7 does not divest the chancery court of subject matter jurisdiction. Subject matter jurisdiction refers only to the court’s power to exercise authority over the nature of the case and type of relief sought. Black’s Law Dictionary 689 (abr. 7th ed.2000). Clearly, chancery courts do have subject matter jurisdiction over appeals from tax assessments ordered by the Commission. However, failure to perfect such an appeal would deprive the chancery court of authority to review and revise the particular cause or issues presented in that appeal, since the chancery court’s authority to review the decisions of the Commission is governed by compliance with the statute.... [A] chancery court has no authority to create a right of appeal from an administrative agency in the absence of clear statutory authority. In other words, the chancery court is without appellate jurisdiction over an appeal filed under [Section] 27-77-7 that is not in full compliance with the statutory requirements.
Id. (emphasis in original).
¶ 23. In 5K Farms, the taxpayer filed a petition in the chancery court without paying the tax assessment or posting a bond as required under the 2005 version of Section 27-77-7.[16] See 5K Farms, 94 So.3d at 223-24. Rather, the taxpayer “filed a motion for supersedeas, requesting that the chancery court enter an order allowing [it] to proceed without posting a bond....” Id. On appeal, this Court stated that it “re *1148 peatedly has held that statutory appeal bonds are jurisdictional — that is, they relate to a court’s appellate jurisdiction.” Id. at 227. According to this Court, there are:
a number of statutes requiring parties to post bond as a condition precedent to perfecting their appeals from administrative-agency decisions. The existence of these statutes indicates that the principle that bonds relate to appellate jurisdiction and hence are within the purview of the Legislature is well grounded in Mississippi law.
Id. at 228-29 (emphasis added). Based thereon, this Court held that “[t]he pretrial bond requirement derived from ... [Section] 27-77-7 (Rev.2005) is a requirement governing appellate jurisdiction....” Id. According to this Court:
[u]nder the 2005 version of the statute that was then current, the chancellor had no discretion to waive or lower the bond requirement, which 5K Farms, a new agricultural operation, claims it did not have the funds to pay. However, we accord great deference to the Legislature regarding tax policy, and the Legislature also determines our appellate jurisdiction.

Id.

¶ 24. Like Khurana and 5K Farms, the case sub judice “involves an appeal from an administrative-agency decision to the trial court, sitting as an appellate court.” 5K Farms, 94 So.3d at 228. Under the version of Section 27-7-73 that was then current, AT & T’s Petition was required[17] to be “accompanied with a bond, to be approved by the clerk ..., in a sum double the amount in controversy....” Miss.Code Ann. § 27-7-73 (1993). But AT & T disregarded that specific statutory requirement in filing its Petition. Based upon Khurana and 5K Farms, in the absence of AT & T’s compliance with the bond requirement of Section 27-7-73, the chancery court erred in concluding that AT & T “properly appealed” the full Commission’s Order. Because “the chancery court’s authority to review the decisions of the Commission is governed by compliance with the statute[,]” as AT & T failed to “fulfill the mandatory requirements necessary to properly perfect [its] appeal under” Section 27-7-73, “the chancery court did not have appellate jurisdiction over” AT & T’s appeal. Khurana, 85 So.3d at 855. See also 5K Farms, 94 So.3d at 227 (“statutory appeal bonds ... relate to a court’s appellate jurisdiction.”). In short, the chancery court lacked “appellate jurisdiction” over an appeal filed under Section 27-7-73 “that [was] not in full compliance with the statutory requirements.”[18] Khurana, 85 So.3d at 855 (emphasis added). See also 5K Farms, 94 So.3d at 229 (“[t]he pretrial bond requirement ... is a requirement governing appellate jurisdiction.... ”). Without a petition “accompanied with a *1149 bond, to be approved by the clerk ..., in a sum double the amount in controversy,” the Commission’s “findings” became “final. ...” Miss.Code Ann. § 27-7-73 (1993).

Conclusion

¶ 25. This Court agrees with AT & T that Sections 11-13-11 and 27-7-73 provide the chancery court with subject-matter jurisdiction to “declare the [cjontested statutes unconstitutional and to fashion the appropriate equitable remedy.” But AT & T patently failed to abide by the prerequisite statutory mechanisms provided in both statutes for making such a challenge (i.e., by paying the Mississippi income taxes and Assessment, there were no taxes for the chancery court “to restrain the collection of’ under Section 11-13-11; by failing to accompany the Petition with a bond “approved by the clerk” and “double the amount in controversy,” the Commission’s “findings” became “final” under Section 27-7-73). Miss.Code Ann. §§ 11-13-11 (Rev.2004), 27-7-73 (1993). Instead, from the outset of this matter, AT & T consistently chose to act by its own rules, regardless of whether statutorily outlined procedures were contravened. For instance, in tax years 1994 to 1996, AT & T did not formally contest the subject tax statutes, but rather filed under the statutorily unavailable “consolidated method” without making that decision facially clear (i.e., the returns were styled “nexus combined income”). AT & T paid the taxes due following utilization of its own reporting method. Then, even after the audit and Assessment, AT & T chose voluntarily to pay the Assessment “under protest,” instead of filing suit in chancery court seeking to “restrain ... collection.... ” Miss.Code Ann. § 11-13-11 (Rev.2004). Finally, AT & T’s Petition was not accompanied with a bond “approved by the clerk” and “double the amount in controversy....” Miss.Code Ann. §27-7-73 (1993). Without AT & T’s adherence to the “procedural protections” established by the Legislature, those statutes were not a proper basis for jurisdiction in the case sub judice. McKesson Corp., 496 U.S. at 50, 110 S.Ct. 2238. Furthermore, as AT & T failed to utilize such “adequate remedies] at law[,]” equity jurisdiction is inapplicable. Davis, 157 So.2d at 507 (quoting 2 Am.Jur.2d, Administrative Law, § 596, p. 429).
CONCLUSION
¶ 26. “Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause.” Steel Co., 523 U.S. at 94, 118 S.Ct. 1003 (quoting Ex parte McCardle, 7 Wall. 506, 514, 19 L.Ed. 264 (1868)). Based upon the above analysis, “[bjecause the chancery court should not have reached the merits of the case, the chancery court’s order[s] ... [are] vacated. The order of the Commission remains in effect.” Khurana, 85 So.3d at 855.
¶ 27. REVERSED AND RENDERED.
WALLER, C.J., CARLSON AND DICKINSON, P.JJ., LAMAR, KITCHENS, CHANDLER, PIERCE AND KING, JJ„ CONCUR.

. AT & T Corporation "was and is a parent New York corporation authorized to do business within Mississippi.”

. Putatively, "under protest.”

.Section 27-7-37 then provided, in pertinent part, that:
(2) Consolidated or combined returns by affiliated corporations.
*1141 (a) An affiliated group of corporations shall have the privilege of making, or the commissioner may require, a consolidated or combined return with respect to the income tax imposed by this article for the taxable year in lieu of separate returns in the following cases:
(i) Corporations taxable solely in Mississippi. Two (2) or more members of an affiliated group of corporations may elect to file a consolidated income tax return when all the business activities of the group of affiliated corporations included in the consolidated return are carried on and are taxable solely in Mississippi.
(ii) Multistate corporations. Two (2) or more members of an affiliated group of corporations taxable in Mississippi and where one or more are taxable in another state may elect to file a combined income tax return. Multistate corporations electing to file combined returns under this section shall determine the Mississippi net business income (or loss) on an individual corporate member basis as required in Section 27-7-23. The Mississippi net business income (or loss) so computed for each individual member shall be combined to detennine the Mississippi net business income (or loss) of the affiliated group of corporations. To the amount so determined shall be added nonbusiness income directly allocable to Mississippi to determine Mississippi taxable income.
Miss.Code Ann. § 27-7-37 (1993) (emphasis added). In 2004, Section 27-7-37 was amended to delete subsection (2)(a)(i). But because that amendment was not retroactive, it is inapplicable to the present appeal. Therefore, unless indicated otherwise, all references to Section 27-7-37 refer to the version in effect during the tax years at issue.

. This Court states that AT & T ''alleges” the “consolidated method” was used in these returns because they were styled "nexus combined income.” According to the Commission, “[n]othing on the face of the return indicated which type of return was being filed.”

. Section 27-7-15(4)(i) provided:
(4) The words "gross income” do not include the following items of income which shall be exempt from taxation under this article:
[[Image here]]
(i) Income from dividends that has already borne a tax as dividend income under the provisions of this article, when such dividends may be specifically identified in the possession of the recipient.
Miss.Code Ann. § 27-7-15(4)(i) (Rev.2010) (emphasis added).

. The Commission consistently denied that the chancery court had jurisdiction pursuant to Section 11-13-11. But the Commission's "Answer and Defenses,” "Answers and Objections to AT & T Corporation's First Set of Interrogatories,” and subsequent stipulations conceded that the chancery court had jurisdiction under Section 27-7-73 to "review the findings of the [Commission] in this matter. ...”

. The chancery court added that to hold otherwise, after expending an "enormous amount of time and energy in the consideration of this matter over the course of approximately ten (10) years[,]" would be "inequitable and irresponsible....”

. This award was comprised of the Assessment of $5,088,516; the Refund of $3,365,934, based on calculations which extended the tax benefits "enjoyed” by other taxpayers to AT & T; and interest on the Assessment and Refund of $4,272,724.

. The Commission’s findings pertained only to the Assessment of $5,088,516, and did not address the Refund.

. The full Commission's “Order” stated that "the statutes passed by the Mississippi Legislature are presumed to be constitutional until set aside by a court of competent jurisdiction.”

. Even AT & T concedes that "[cjases brought under § 11-13-11 need not have been presented to the [Commission] first.” (Emphasis added.)

. Instead, for tax years 1994 to 1996, AT & T chose to file under a method of reporting which was statutorily unavailable to it, in a manner which could mislead or confuse the examiner of the actual methodology used (i.e., the returns were styled "nexus combined income”).

. Section 27-7-73 was repealed effective July 1, 2005. See Laws of 2005, Ch. 499, § 36. But that repeal was expressly inapplicable to "an administrative appeal and/or judicial review of any assessment, refund claim, ... before the date on which this act becomes effective.” Id.
In 2005, the Legislature enacted Mississippi Code Section 27-77-7(1) which provided, in pertinent part, that "the taxpayer shall within thirty (30) days from the date of the [Commission] order, file a petition in the chancery court appealing the order and pay the tax or post the bond as required in this chapter.” Miss.Code Ann. § 27-77-7(1) (2005) (emphasis added). The “bond” referenced in Section 27-77-7(1) was to be "a surety bond approved by the clerk of the court in a sum double the amount in controversy ...Miss. Code Ann. § 27-77-7(3) (2005) (emphasis added).
In 2010, the Legislature amended Section 27-77-7(3) to provide that the “bond" referenced in Section 27-77-7(1) shall be "a surety bond approved by the clerk of the court in a sum half the amount in controversy Miss.Code Ann. § 27-77-7(3) (Rev.2010) (emphasis added). Additionally, the chancellor now "retains jurisdiction, after motion, notice and hearing, to reduce the amount of the bond.” Id.

. Regarding those actions, it is undisputed that AT & T’s Petition was not "accompanied with a bond, to be approved by the clerk ..., in a sum double the amount in controversy.” Miss.Code Ann. § 27-7-73 (1993).

. The applicable statute was the 2005 version of Section 27-77-7. See footnote 13 supra.

. For a discussion of the 2005 version of Section 27-77-7, see footnote 13 supra.

. "‘[S]hall' is mandatory...." Khurana, 85 So.3d at 854 (quoting Franklin, 858 So.2d at 115).

. This requirement of "full compliance” undercuts AT & T's contention that paying the Assessment in lieu of the bond requirement was not defective. Khurana, 85 So.3d at 855. The bond at issue was to be "double the amount in controversy....” Miss.Code Ann. § 27-7-73 (1993). That fact fundamentally distinguishes this matter from cases where the cash paid was equal to the bond amount. See Sumner v. City of Como Democratic Executive Comm., 972 So.2d 616, 618-19 (Miss.2008) (in election-related petition, payment of $300 cash in lieu of $300 cost bond deemed permissible; the petitioner "provided in cash the statutory maximum amount, ipso facto, the cost-bond provision ... was satisfied.”); Jefferson v. Mississippi State Highway Comm'n, 254 So.2d 181, 181-82 (Miss.1971) (in appeal from special court of eminent domain, payment of $300 cash in lieu of $300 appeal bond deemed amendable as "[t]he deposit of cash unquestionably satisfied” the purpose of "securing] the payment of the costs.”). Moreover, in Khurana, the taxpayer *1149 paid the assessment (less $212) only one week after filing the petition, yet this Court still concluded that because the taxpayer “did not fulfill the mandatory requirements necessary to properly perfect his appeal under [Section] 27-77-7[,]” then "the chancery court did not have appellate jurisdiction over Khurana’s appeal.” Khurana, 85 So.3d at 852-53, 855.